Good morning, and may it please the Court. My name is James Dickey from the Upper Midwest Law Center on behalf of Plaintiffs Appellants in this matter. Just a couple of years ago, this Court held that the Plaintiffs had adequately alleged their standing to challenge defendants on constitutional subsidy of the teachers' union's political viewpoint through the paid union leave provision. In the complaint, plaintiffs clearly alleged that their tax dollars only make up 15 to 20 percent of the school district's budget. We argued in our briefs back then, and this Court assumed that to be true. We admitted it was true, and this Court still held that the complaint on those allegations sufficiently alleged standing. Just like the plaintiffs in 281 Care Committee on their second trip to this Court, the plaintiffs here have now indisputably proven the allegations that they made in the complaint. So under this circuit's prevailing law, plaintiffs have municipal taxpayer standing. There is no strict tracing requirement for municipal taxpayer standing that requires a plaintiff to prove that no other funds were used in the making of the illegal subsidy at issue. And the New Jersey courts in the Everson case before it got to the U.S. Supreme Court actually said there was no record evidence of the source of the funds, and we cited that on the reply brief on pages 12 through 13. And it should not be the law that there is a requirement of strict tracing. Local governments should not be allowed to avoid court scrutiny unless they put a line item in the budget that says illegal expenditure here. They should not be able to throw all their money into a budget with federal and state dollars to avoid court scrutiny. Doing so would essentially erase the municipal taxpayer standing doctrine for all intents and purposes. Do you agree that it has to be direct and immediate? Yes. Do you agree it has to be measurable? Yes. Proceed. Thank you. The Supreme Court has not recognized and maintained municipal taxpayer standing for over a century to allow for the erasure of the doctrine. In addition, I would note for the First Amendment claims here, the plaintiffs are like the agency fee payers in Janus, they are like the students in college at Southworth, and they are like the mushroom growers in United Foods. Well, now the District Court did not rule on the merits, right? Only on standing? Yes, Your Honor, on standing. But we moved for summary judgment affirmatively as well below the District Court. And so the District Court ruled on the standing issues and the jurisdictional issues. I acknowledge that. But we did affirmatively move for summary judgment. And just like the Plaintiffs' Intuition and Care Committee, who also affirmatively moved for summary judgment at the District Court in that case, this Court then reversed addressed the merits and then, by first just standing, reiterated the same thing that the Court said in 281 Care Committee 1, and then also reached the merits in the First Amendment claims and then remanded basically for the entry of summary judgment. And the case settled very soon after that. But I would also note that the plaintiffs here are local taxpayers to a local school district. They have a right not to subsidize the speech and political advocacy of a private advocacy group like the Teachers' Union. Well, you use subsidy all the time. The other side agrees with it, by the way. They say there was a subsidy. But boy, everything a school board does is a subsidy to somebody. So where do you draw the line? And that's the way Janus is different because it's easy to draw the line there. You're a member or non-member. And non-members are paying for the speech. But here, this whole basis of taxpayer standing, if you go back to Judge Dillon, who served in the Justice, and you read it carefully, it says, I'll use the Supreme Court's words so I don't misquote, the interest of a municipality in the application of the municipality's monies is direct and immediate, and the remedy by injunction to permit their misuse is not inappropriate. So answer that question about how Janus is just completely different than that. I don't think Janus is different in the municipal taxpayer standing context at all. And I think that when you're looking at the analogy we're making here, you have, for example, a union member. The reason why the agency fee money is offensive is because they were being required to subsidize all the union's political activity. And so, but at the same time, what did the court say in Janus? Look at the discussion that the court had about chargeable versus non-chargeable expenses. Once money goes into the kitty, like taxpayers put money in the kitty, it is very difficult to figure out where the money is actually going. But the whole basis from Judge Dillon and from Frothingham and from several of the cases is that the taxpayer is a member. They are the person, the taxpayer, the owner. The corporate analysis is the best because that's what both the Supreme Court says and Judge Dillon says. The analogy is to a shareholder, and a shareholder with one share can sue on anything the corporation does. And your taxpayer is a member of the union in Janus. They are not the non-member of the union in Janus. That's true, Your Honor. They are not a non, well, I should say that they are a member of the collective bargaining unit. So they're a dues payer or a non-dues payer, but they're still a member of the collective bargaining unit by virtue of being an employee of the government. No, I'm talking about the taxpayer. Doesn't the taxpayers, isn't that what counts here, is the taxpayer is a member of, who owns the municipality. They're the shareholder. Yes, Your Honor. Follow my analogy? Yes, yes, I agree. The taxpayer, so our clients here are taxpayers to the school district. They have that unique relationship to the school district. That's not true in Janus. Well, in Janus, the union member who is, or sorry, the collective bargaining unit member who is a non-member of the union is still being forced to subsidize the union's political activity. I'm not sure I'm getting at your point, Your Honor, but I'm, what I would say Well, is it a matter of degree? You see what, I think you and I are communicating. There is a difference. There are certainly some facial differences between Janus and this case in terms of where the money is coming from. But the money is coming in Janus from both members Let me try this one on you. Free riders is the basis, one of the basis of Janus and you're well aware of that argument. Aren't you, aren't you trying to talk about someone who is a renter in the area who doesn't pay property tax and comes in as not a taxpayer? Well no, Your Honor, but I would, we're talking obviously not about renters. We're talking about people who pay property taxes like our clients. I would say our clients have a, they are, under your analogy, I think we have a stronger connection to the municipal FISC than the non-dues payer in Janus like Mark Janus who paid an agency fee because he was forced to, but he was not actually a member of the union. So I think we actually have a stronger connection to the municipal FISC in this case than in, than Mark Janus had in the Janus case. We, our clients are actually owners in the municipal FISC, as you note, in this case the school, the school district. And I think what's really important to focus on is that the Frothingham case, followed by Everson, followed by Doremus, all talk about, their focus is all on the expenditure. It's about whether the money is occasioned solely by an expenditure that's been identified. And so that's where you get rid of, I think, the slippery slope problems that are inherent in municipal taxpayer standing in general. Because you have, an example, in Everson, you have a school bus contract that allows for the transport of Catholic school students within the New Jersey school district, but you, you know, and so the plaintiffs had standing, as the Doremus Court recognized, they had standing to challenge that expenditure. And again, I go back to the language in the New Jersey Court of Appeals in the Everson case before it went to the U.S. Supreme Court, there was no record evidence as to the source of the $357. So the source is not really the important thing. The fact is, there's a relationship, as Judge Benton pointed out, with the taxpayer to the school district. And what then matters is, is there an expenditure? And in this case, as Judge Benton also noted, we've talked, both sides have talked about there being a subsidy. There is an expenditure here that is measurable and it is solely occasioned, but that expenditure solely occasions the complaint that we have here. So what was really important for taxpayer standing, again, is that we're focusing on what the expenditure is. Pages 9 through 14 of our principal brief, we exhaustively detailed exactly how the union is conferred a benefit from the public FISC that they don't repay to the school district. And we would just note that, why isn't the subsidy, I know I'm interrupting your sentence, why isn't the subsidy, though, awfully close to government speech and the government deciding what they're doing? And then we're in a whole different, a much more relaxed realm of scrutiny. If it were government speech, which it's not, we would be in a more relaxed realm of scrutiny. I would note that that argument, that defense has been waived. It's an affirmative defense that has not been made. But I'd further note that in this case, the school district, while it is an appellee and a defendant in this case, actually agrees with us that this subsidy is illegal, at least under state law. Well, have they said that before this court? Have they said that before any court? I know what their counsel said and the other stuff on the record. I don't recall. They didn't file a brief in this opinion. No, they didn't. They didn't file a brief. For starters. Did they last time? I don't think they did last time. I don't recall. I don't recall, Your Honor. I don't either. But more importantly, have they ever really said that? Have they really said that in pleadings?  Yes, they have. In their request for the responses to the request for admissions, I believe it's on page 540 of the joint appendix. They respond in requests for admission 8 and 9. They admit that we do have district tax dollars being used to pay for the subsidy at issue here. They admit that the reimbursement, if they were fully reimbursed for the whole thing, that it would not be a problem. We would not be lending material support. And they acknowledge in their response to requests for admissions that the problem with this is that they are lending material support to the union, which is a violation, as we argue. Which they agreed to in a collective bargaining agreement. They did agree to it in a collective bargaining agreement. So maybe that's why they've waived it in many respects. And I wouldn't speak to whether they have waived their arguments or not, Your Honor, but we are making that argument that we have not waived. That it certainly is a violation of state law that this material support provision exists in the collective bargaining agreement. But there's no state law claim in this case? There is pendant jurisdiction, but we've told the court that basically once the constitutional federal claims are dealt with, you know, that we didn't raise the dismissal of the state claims on this appeal. So we expect that those would probably be dismissed without prejudice if that were the case going forward, if we were to lose the case. But we did bring state law claims in this matter. Let me, in the first opinion by this court, we said that, and I think it was the allegation was the union doesn't fully reimburse. Correct. What I think happened then on remand, and correct me if I'm misunderstanding that, this, but my understanding is that the union does fully reimburse the cost of a substitute teacher. Is that right? That is correct. So is your position that that just simply doesn't matter or that there still is somehow a deficit, so to speak, in the fisc of the municipality? It's the latter, Your Honor. It's that in the Everson and the Doremus and Frothingham case, the question is, does the subsidy issue increase the cost of operating the school district? This budget neutrality idea, which has been advanced by Appleby's, is just smoke and mirrors. You can assume anything you want in a budget. You can assume any legal payments you want. It doesn't mean that the payment should be made regardless. And I think the Smith versus Jefferson County case goes to this in the Sixth Circuit. But directly to this point, again, I'd look back to pages 8 or 9 through 14 of our principal brief. We have exhaustively sourced exactly how much it costs the district in terms of salary to provide paid leave for these teachers, and it's only partially compensated by that substitute cost. Yes, the substitute is paid for. We don't dispute that. That's the case according to the collective bargaining agreement, and that's what the record shows. But that is not as much value to the school district taxpayer as the salary and benefits of an actual teacher who is a full-time teacher. So there is a delta, and we've shown that delta in great detail on pages 9 through 14 of the brief. Let me ask you, do you really need to show the delta? If you steal my car and then you pay me back later, I think I still have standing to sue you. That's just a matter of damages. It's not a matter of standing. Yes, Your Honor. Is the delta really required? Well, I think that it's, given the defenses that were raised in this case, I think it was important to show that there really is a difference here, and of course the delta is required in terms of our remedy that we're seeking in part of not just an injunction, but also paying back the school district for the extra money. It is a damages question. It is. It is, Your Honor. But I would just note that in the Sixth Circuit case, Smith v. Jefferson County Board of Education Commissioners, that I think is where the court actually said there is no requirement of a depletion of the public FISC for municipal taxpayer standing. And the court on Bonk in that case went through exhaustively all the different arguments about what kind of taxpayer standing was required to show taxpayer standing. And the argument was made that they decided instead of using a public school, they were going to use Kingswood Academy, which is a private school, which had a religious background, and they were going to use that school. And the defense in that case by the government was, well, that's not depleting the public FISC. It's actually saving us money. And the court held that that doesn't matter because it's still complaining about that particular expenditure, which is the only expenditure that's being pointed out as a problem by the municipal taxpayer. And I'm way into my rebuttal time, so I'll reserve whatever I have left. And I appreciate the court's time, unless there's no other questions right now. Okay. Thank you. Thank you. Good morning, Your Honors. Ferris Akrami on behalf of Anoka-Hennepin Education, Minnesota, the definite appellee in this case. This is a straightforward appeal about the limitations of Article III on the federal judicial power. The taxpayer plaintiffs seek to enlist the federal courts to impose their policy preferences because they disagree with one adopted by democratically accountable local leaders. The disputed policy is a provision of ISD-11's collective bargaining agreement with its teachers' union. Under that policy, discovery has shown, the district's 3,000 plus teachers are permitted up to 100 days collectively per year out of more than 570,000 total duty days to assist with union business. And discovery has shown that the union directly pays the only expense triggered by a day of AHAM leave, the cost of a substitute teacher. On standing, the district court was correct that the taxpayers have not demonstrated a sufficiently concrete and immediate injury to satisfy Article III. But the words of the Supreme Court are direct and immediate? Correct. Address the shareholder of the corporation analogy which motivated this doctrine from 1850 to today. Thank you, Your Honor. So I think that the shareholder analogy was a helpful frame for the Supreme Court to identify the concreteness of the injury that municipal taxpayers suffered as compared to state and federal taxpayers. But what the Supreme Court did not say in 1923 certainly was that a municipal taxpayer could challenge any decision by a local government that happened to have a benefit to a third party. The Supreme Court did not say you are sort of allowed to, in federal court, have standing to second-guess democratically accountable decisions. And I think that... Counsel, we have a long string of cases. These are, you're correct, just since 1923. You've updated it a little bit. But they surely have standing here, right? No, Your Honor. The interest of a taxpayer of a municipality in the application of the municipality's monies is direct and immediate. The Supreme Court has given them standing. So, respectfully, Your Honor, every court that has decided this issue in recent times has limited that holding in part by applying the Supreme Court's ruling in Doremus with one exception, which is the Sixth Circuit and Smith. And that was in bank, right? Exactly. And they rejected application of Doremus. This Court and every other court of appeals has applied Doremus to say you actually have to show an increment of expenditure. And so that's what this Court... Aren't the words a good-faith pocketbook action? Correct. And this Court found that the plaintiffs here, the taxpayers, had pleaded a good-faith pocketbook action in part because they pleaded that the union, quote, the union does not fully reimburse the expense. And the Court went to great pains in that previous decision to emphasize that at the pleadings, those general allegations were presumed correct and that the taxpayers would then need to prove the specifics to support them. But a good-faith pocketbook action doesn't require an increase in taxes and it doesn't require an increase in expenditures, right? So under the decisions of every court to address the issue in recent times, so for instance the Ninth Circuit and the decisions in Doe and Burwell and the Second Circuit, most recently in Citizens United to Protect Our Neighborhoods, the Court made clear that just the cost of salaries of public employees are not an increment of expenditure occasioned solely by a challenged policy if there's no additional increment. In Doremus itself, the challenged policy was the loss of teacher's time at the beginning of every school day in every classroom in New Jersey. And the Supreme Court said the teacher would get paid the same amount whether or not they were reading the Old Testament for a few minutes in the morning. This is not a... There's no cost occasioned by this. And the salary does reflect that all these teachers are salaried, right? Correct. Correct, Your Honor. So I think to be consistent with every other circuit to address this issue that has applied to Doremus, there has to be some increment of cost above and beyond regular salaries. As the Judge Sullivan in the Second Circuit recently stated, to confer taxpayer standing on such a basis would allow any municipal taxpayer to challenge virtually any government action at any time since nearly all government activities are conducted or overseen by employees whose salaries are funded by tax dollars. Here, the union acknowledges that there is one extraordinary cost to this leave provision, and that is the cost of a substitute teacher, in part because the union and the district agreed to a structure under which the union would provide notice and would take leave in increments of a half day or a whole day. The union agreed it's necessary to avoid disruptions, to minimize disruptions, and to maximize predictability to give leave time so that a qualified substitute teacher at the rate unilaterally established by the district can be retained to cover that time. But the substitutes in the union? No, the substitutes are not covered by the union. But the district... Can the substitutes be in the union? Frankly, I'm not sure, Your Honor. I'd have to supplement if that would be of interest. So I think there are really three key facts that distinguish this case since discovery began. The first is the acknowledgment that my colleague on the other side agreed with that the cost, not the only cost, but that the reimbursement rate is, in the district's words, the expense of the aid and leave provision. And as the district's former general counsel acknowledged, it is in fact the only expense and any additional compensation would be a windfall. Because again, if this provision were struck from the CBA tomorrow, the district would save not a cent, not a penny. Its expenditures would not change one iota, except maybe that there are a few days that it gets compensation for that it does not actually have to recruit a substitute. Why isn't the reimbursement thing just a red herring? In other words, when the expenditure, you know, in the classic standing situation, you steal my car and six months later, you fully reimburse me the value of my car, I still have standing. I may not have any damages, but I still have standing. Thank you, Your Honor. This is an interesting hypothetical and it sort of calls on the structure of this provision that allows quarterly true-ups. If I'm hearing you correctly, I think it kind of invokes the economic concept of like the time value of money. Well, I'm not even so sure that that matters. I mean, let's say you reimburse me for the time value of the money as well. I still have standing. I may not have damages in the end, but I still have standing. Under Doremus, if you were directly harmed, you might. But if your claim is... You stole my car. If your claim, but to be, to sort of supplement the metaphor a little bit, I think the interest here is not you stole my car. It's the school district agreed to let you drive a car that the school district owns so long as you pay for the cost of mileage and maintenance on the car. That is, the better analogy is not your personal car was stolen, because Doremus requires a good faith... I think it is. I think the analogy is you're using taxpayer funds for an illegal purpose. And so you get reimbursed for it. I don't know. I just... It doesn't sit right. It seems like intuitively once that money is spent, whether it's reimbursed or not, they're standing. So that would be contrary to how every circuit has applied Doremus. What about the Sixth? The Sixth Circuit specifically declined to apply Doremus in the municipal taxpayer standing context. It's the only circuit that has not. Judge Moore there did write an even if sort of sentence or paragraph explaining that there, the challenge policy was not free of cost because there was still a cost to doing the alternative school program. The analogy here would be if the private school agreed to cover the costs of the program itself and that the cost declines to zero. Well, let me ask you this. Let's assume there even does have to be some sort of an economic loss.  Isn't there a difference between a regular teacher and a substitute teacher? So, you know, in terms of what the value that the students who are presumably children of taxpayers, of what they actually receive. So presumably, Your Honor, there may be a hypothetical value in the same way that there's a difference between a teacher who is teaching the curriculum of a class and a teacher who is spending several minutes reading Bible verses. There may be an injury, but as the Supreme Court explained in Doremus, that injury is not cognizable to taxpayers. The very similar case came up to the Supreme Court a few years later in the context of a student's challenge. That was the Abington Township case where the Supreme Court said that may be, or not that may be, that is an injury, sufficient, but that's not a taxpayer injury. And that is exactly the nuance here. There may be a student or a parent who could bring a claim, but taxpayers are not injured by this policy. It could be deleted from the CBA tomorrow, and the district would be a few hundred dollars worse off per year. Is it significant that this rate for obtaining a substitute teacher is the same rate that the school district uses in other contexts? I mean, in listening to the discussion, it almost sounds a lot like the school district, because of this collective bargaining provision, is losing the use of one or more teachers for a period of time. So, what's the cost of that? What's the reasonable cost of the use of a teacher? And apparently, this substitute teacher rate is what is used in any number of circumstances in the school district. Right. So, two quick responses. The first is, I think this is a tension with how the taxpayers read Doremus. They would argue, they would, I think, have to concede that if this provision were structured to allow a teacher to interrupt class time at any point they choose for 15 or 20 minutes to do the union's business, just cancel instruction for 20 minutes, that would not be subject to challenge. The difference, they say, is that teachers leave for an entire half day or whole day. And as the union would submit, and I think that is reflected in the record, that the structure of half day or whole day leave is designed to minimize disruption. Because again, the district can retain a substitute at the rate it sets. But I want to get to the core of your question, which is, it is extremely significant that this substitute rate is used for not just the union. It is the same rate that teachers get to sell back their excess sick leave time at. It's the same rate that teachers pay if they want to take a personal day adjacent to a break. It is clear from the face of the CBA that this substitute rate is the spot market rate, to the extent that one exists, for a single day of teacher time. And in fact, the union is paying that value. I want to speak very briefly about the tracing requirement, just to acknowledge that it is, then Judge Barrett did a, we think, very reasoned job of attempting to sort of reconcile Article 3's injury in fact requirement, the teachings of Frothingham about the municipality's monies, and the Supreme Court's later decisions in cases like Daimler-Chrysler, where the Supreme Court made clear that municipal taxpayer standing cannot be used as a workaround to challenge what is really state or federal spending. And it's not the first or only case to suggest that the source of funds matters. It cited a decision in the Ninth Circuit, Cantrell, that pointed out there were no municipal funds spent. The Tenth Circuit and American Humanists, similarly, parsed between district tax funds and funds raised by students. And the Eleventh Circuit, more recently, and Ladies Memorial Association, dinged the plaintiffs there for never alleging that it was municipal tax dollars, rather than other funds, that went to removing. There are many establishment cases, of course, that go the other way. But let's don't go there. In your short time, suppose they're standing. Do you want to address Janice? I would absolutely address Janice. My last point on tracing is just that the Supreme Court in Hine also applied a tracing requirement to the Flast exception. And these narrow exceptions to general rules— Flast is establishment. Proceed.  Please. So on Janice, the taxpayers hardly acknowledge the earthquake that would come from applying the First Amendment in this context. As I believe both Judge Grunder and Judge Benton's questions earlier pointed to, municipal policies always have beneficiaries, and they often promote expressive activities. Government policies are permitted to do so. Under Buckley and League of Women Voters, and perhaps most clearly under Regan, the Supreme Court explained the government is not required to fund or support counter-speech simply because it supports speech. The perhaps clearest example is the National Endowment for Democracy, which has statutory authority to make grants specifically to labor organizations to support their expressive activities. And to that, the Supreme Court wrote in Rusty Sullivan,  when Congress established a National Endowment for Democracy to encourage other countries to adopt democratic principles, it was not constitutionally required to fund a program to encourage competing lines of political philosophy, such as communism or fascism. At best, the plaintiff's claim here is that this policy promotes the speech of an organization. They do not contend that it stymies their own speech. And I want to get to the very core of a question you asked a few minutes ago. These are taxpayers. They have political rights in the subdivision of government that they are litigating against here. But the folks in the compelled subsidy cases, like Janus and the other compelled subsidy cases, the key fact was that they had no political rights there. They were subject by virtue of their vocation. And I will finish my summation in just a moment. By respect of their vocation or their livelihood, they were compelled to pay an exaction to a private speaker whose speech they did not agree with. Here, the core of the claim is taxpayers disagreeing with their local authority's decision that, at worst, promotes the speech of one person. Respectfully, we think there are key issues that the district court, if you do reach the merits, the district court should be first to review. This is a court of review, not first review. And there are really important questions, including those state law issues, which are potentially independent, insufficient grounds that would avoid opening the floodgates to a truly unprecedented reading of the First Amendment that would turn the business of municipal government and the Eighth Circuit on its head. Thank you, Mr. Crummey. Thank you, Your Honors. Mr. Dickey, we'll allow you two minutes, please. And if I can start, I know you've got things you want to cover, but if I can start, does Doremus apply to our standing analysis here? And if so, how do you square it with your standing theory? Your Honor, I'm glad you started there because that's where I wanted to go. I think if you look at Doremus, it's very much like this coupon case from the 28-J submissions that the party submitted last week, where you essentially have, in Doremus, you have a teacher who's reading out of the Bible for five minutes at the beginning of the school day. In the coupon case, you have a planning contractor who's being used to do all kinds of stuff related to zoning law and then also has to deal with what the Orthodox Jewish group is wanting to do in terms of variances from the zoning requirement. There's no problem between this case and Doremus. Doremus just basically says, look, a teacher is doing what the curricular requirements of the job are, which is, in this case, following a state statute, not a municipal ordinance, and is essentially just doing what they were already going to do. In this case, it's very different than that. You have a teacher taken out of their job for the school district. Away from what the municipal taxpayer is paying for. So that makes it different from Doremus and coupon right away, and transplanted into doing lobbying work and politicking for a local public sector union. That is a huge distinction between this case and that. There would be no problem for the taxpayer. The concept of that paid leave itself as a problem is not here. There is no problem for teachers to take personal paid leave to do whatever they want with their personal time, because it's a viewpoint neutral position. Once you start subsidizing the exact viewpoint of a union, in this case, using the municipal FISC, not the National Endowment for Democracy or Congressional Actions or anything like that, you have a real problem. And I want to really quickly respond to this idea that they're salaried, and therefore there's no diminution or anything like that to their salary. I would point the court to Joint Appendix 348. The question was, what is the salary deduction for a day of unpaid leave? Is it the teacher's annual salary divided by 187 days? I believe so. That was the district's former general counsel testifying. There is a cost to the district occasioned by this subsidy, and so we would ask the court to reverse. Unless there are no further questions, I'll wrap it up. Very well, hearing none.